**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL MILLMAN, on behalf of himself and all others similarly situated, | |
| Plaintiffs, | CIVIL ACTION NO. 07-4846 (JLL) |
| v. | **OPINION** |
| SUBARU OF AMERICA, INC., | |
| Defendant. | |

**LINARES**, District Judge.

Presently before the Court is Defendant Subaru of America, Inc.'s ("Subaru") motion (i) to dismiss Counts I and II of Plaintiff Michael Millman's amended class action complaint ("Amended Complaint") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and (ii) for a more definite statement of Count III pursuant to Rule 12(e). The Court decides this motion on the briefs submitted in support of and in opposition to the instant motion, without oral argument. See Fed. R. Civ. P. 78. For the reasons set forth in this opinion, both Subaru's motion to dismiss Counts I and II of the Amended Complaint and for a more definite statement in Count III are granted.[1]

---

[1] The Court retains jurisdiction over this class action pursuant to 28 U.S.C. § 1332(d)(2). Since this Court exercises its diversity jurisdiction over this action, the law to be applied is that of the forum state–New Jersey. Am. Cyanamid Co. v. Fermenta Animal Health, 54 F.3d 177, 180 (3d Cir. 1995). The parties do not dispute the application of New Jersey law, and the Court will apply it accordingly to Plaintiff's claims.

1

## I. Factual and Procedural History[2]

Plaintiff Michael Millman, a New Jersey resident, purchased and currently owns a 2002 Subaru Impreza WRX automobile (the "Impreza"), manufactured and designed by defendant Subaru, a New Jersey corporation headquartered in Cherry Hill. (Am. Compl. ¶¶ 1-2.) After detecting a fuel odor in the passenger compartment of the Impreza, Plaintiff brought it in to be repaired. (Id. at ¶ 1.) Plaintiff outlaid $750.00 for the repair of the apparent fuel leak–a leak that "may pose the risk fo a fire and/or explosion"–and subsequently sought reimbursement from Subaru. (Id.; id. at ¶ 3.)

Subaru was aware of this problem as it had issued an "All Technical Service Bulletin" on or around April 1, 2003, stating that the Impreza "may experience a fuel smell in cold weather . . . from the rubber hose connector, located under the intake manifold, between two direct fuel-feed metal lines to the injectors." (Id. at Ex. A, ¶ 27; see id. at ¶¶ 1, 4.) The bulletin also provided instructions regarding how to repair the problem. (Id. at Ex. A.) Subaru refused to compensate Plaintiff for the cost of the repair. (Id. at ¶ 1.) Plaintiff alleges that the problem he experienced pervades the "tens of thousands" of Impreza vehicles manufactured (and purchased) between 2002 and 2007 (the "Imprezas") and that Subaru has never warned its customers of this defect or repaired the defect in the vehicles at its own cost. (Id. at ¶¶ 4-6.)

On October 5, 2007, Plaintiff filed a class action complaint against Subaru under Rules

---

[2] The facts recited herein are taken from the Amended Complaint and are assumed true for purposes of this motion. In crafting this factual and procedural history, the Court relies on the operative complaint as well as the exhibits submitted by the parties. See, e.g., Oran v. Stafford, 226 F.3d 275, 289 (3d Cir. 2000); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Both parties have submitted affidavits in support of their respective positions. However, the Court does not find it necessary to consider the affidavits in resolving the instant motions.

23(a) and (b)(3) of the Federal Rules. Approximately two weeks later, Plaintiff filed the Amended Complaint, alleging negligent design and manufacture of the Imprezas (Counts I and II, respectively) and fraud (Count III). Plaintiff brings this action on behalf of "[a]ll persons or entities who own(ed) or lease(d) the [Imprezas] and who suffer from, or may suffer from, the design and/or manufacturing defect resulting in the odor of gasoline in the passenger compartment." (Id. at ¶ 12.) Specifically excluded from the class are those people "who have experienced physical injury as a result of the defects at issue in this litigation." (Id.) Plaintiff seeks to recover damages for the costs of repair (which ranged from $400.00 to $1,300.00) and for a court order, directing Subaru to repair or make replacements in all Imprezas that have not yet had the fuel leakage problem corrected. (Id. at ¶ 8.) Defendant responded to the Amended Complaint on November 21, 2007 with the instant motions to dismiss Counts I and II of the Amended Complaint pursuant to Rule 12(b)(6) and for a more definite statement in Count III pursuant to Rule 12(e).

## II. Legal Standard

### A. Rule 12(b)(6)

The applicable inquiry under Federal Rule of Civil Procedure 12(b)(6) is well-settled. Courts must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party.[3] See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982); Allegheny Gen. Hosp. v. Philip Morris, Inc., 228 F.3d 429, 434-35 (3d Cir. 2000). However, courts are not required to

---

[3] In doing so, a court may look only to the facts alleged in the complaint and any accompanying attachments, and may not look at the record. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1251, 1261 (3d Cir. 1994).

3

credit bald assertions or legal conclusions improperly alleged in the complaint. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429 (3d Cir. 1997). Similarly, legal conclusions draped in the guise of factual allegations may not benefit from the presumption of truthfulness. See In re Nice Sys., Ltd. Sec. Litig., 135 F. Supp. 2d 551, 565 (D.N.J. 2001).

A sound complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1959 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Moreover, "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Id. Ultimately, however, the question is not whether plaintiffs will prevail at trial, but whether they should be given an opportunity to offer evidence in support of their claims. Scheuer, 416 U.S. at 236.

**B.    Rule 12(e)**

Federal Rule of Civil Procedure 12(e) permits a defendant to make a motion for a more definite statement "[i]f a pleading . . . is so vague and ambiguous that a party cannot reasonably be required to frame a responsive pleading." Such a motion "shall point out the defects complained of and the details desired." Fed. R. Civ. P. 12(e). Whether to grant such a motion is soundly within the district court's discretion. Clark v. McDonald's Corp., 213 F.R.D. 198, 232 (D.N.J. 2003). When a complaint does not provide a defendant notice of the facts underlying the plaintiff's claim(s), the defendant cannot adequately frame a proper response and the "Rule 12(e) motion for a more definite statement is perhaps the best procedural tool available to the defendant to obtain the factual basis underlying [the] plaintiff's claim for relief." Thomas v.

4

Independence Tp., 463 F.3d 285, 301 (3d Cir. 2006). With this framework in mind, the Court turns now to Defendant's motions.

### III. Discussion

#### A. Negligent Design and Manufacture Claims

Defendants argue that Counts I and II of the Amended Complaint, alleging tort claims for negligent design and manufacture of the Imprezas by Subaru, are barred by the economic loss doctrine. (Def. Br. at 5-6.) Plaintiff maintains that the economic loss doctrine does not apply to these claims because the fuel leakage and resulting gasoline vapors pose a serious risk to persons or property other than the Imprezas. (Pl. Br. at 3-5.)[4]

"[A] commercial buyer seeking damages for economic loss[5] resulting from the purchase of defective goods may recover from an immediate seller and a remote supplier in a distributive chain for a breach of warranty under the [Uniform Commercial Code] ("U.C.C."), but not in strict liability or negligence." Spring Motors Distribs., Inc. v. Ford Motor Co., 98 N.J. 555, 561 (1985) (emphasis added). The economic loss doctrine bars tort claims for harm sustained only to the product alone because "[w]hen the harm suffered is to the product itself, unaccompanied by

---

[4] Plaintiff's opposition brief contained no page numbers to assist the Court in determining his compliance with L. Civ. R. 7.2(b). While it is not the Court's duty to count pages, for the sake of clarity and ease of reference, the Court cites to page numbers by the order of the pages, with page one succeeding the cover page.
    The Court also notes that Plaintiff's opposition does not comply with L. Civ. R. 7.2(b) as it contains neither a "Table of Contents" nor a "Table of Authorities." On this basis, the Court should dispose of the brief. However, to promote judicial efficiency and fairness, it has considered Plaintiff's opposition.

[5] Economic loss "encompasses actions for the recovery of damages for costs of repair, replacement of defective goods, inadequate value and consequential loss of profits." Alloway v. Gen. Marine Indus., 149 N.J. 620, 627 (1997).

personal injury or property damage, . . . principles of contract, rather than of tort law, [are] better suited to resolve the purchaser's claim." Alloway v. Gen. Marine Indus., L.P., 149 N.J. 620, 632 (1997); see East River Steamship Corp. v. TransAmerica Delaval, Inc., 476 U.S. 858 (1986) (holding that when a commercial party alleges injury only to the product itself resulting in purely economic loss, the claim sounds in principles of contract, not tort law); Parker v. Howmedica Osteonics Corp., No. 07-2400, 2008 WL 141628, at *5 n.7 (D.N.J. Jan. 14, 2008) (Linares, J.) ("The economic loss doctrine holds that a commercial buyer may not levy a tort cause of action to recover for economic losses sustained from damage to the product itself"); Trans Hudson Express, Inc. v. Nova Bus Co., No. 06-4092, 2007 WL 1101444, at *5 (D.N.J. April 11, 2007) (Linares, J.) (dismissing plaintiff's claims for negligence and strict products liability with prejudice under the economic loss doctrine).[6] Here, Plaintiff alleges damage only to the Imprezas–and no other property. Furthermore, those people who may have sustained personal injuries from the alleged fuel leak are specifically excluded from the class at issue here. The economic loss doctrine then seemingly forecloses Plaintiff's tort remedies for said harm.

However, Plaintiff alleges that his claims may proceed due to the grave possibility of harm to persons or other property caused by the fuel leak, citing Goldson v. Carver Boat Corp., 309 N.J. Super. 384 (Super. Ct. App. Div. 1998). (Pl. Br. 4-5.)[7] This Court considered an argument analogous to Plaintiff's in Trans Hudson. There, Trans Hudson maintained that "the defective product at issue created a serious and substantial risk [of harm] to [other people]."

---

[6] For a history of the development of the economic loss doctrine, see Naporano Iron & Metal Co. v. Am. Crane Corp., 79 F. Supp. 2d 494 (D.N.J. 2000).

[7] Plaintiff has not alleged any disparity in bargaining power between the parties with respect to the purchase of the Imprezas.

Trans Hudson, 2007 WL 1101444, at *3 (quotations omitted). The Court found this argument to assert the "sudden and calamitous" exception to the economic loss doctrine established by Consumer Power Co. v. Curtiss-Wright, Corp., 780 F.2d 1093 (3d Cir. 1986). The Court will construe Plaintiff's argument here to assert the same.

Agreeing with Naporano Iron & Metal Co. v. Am. Crane Corp., 79 F. Supp. 2d 494 (D.N.J. 2000), in which the court held that under East River and Goldson, "New Jersey law contains no 'sudden and calamitous' exception to the economic loss doctrine," 79 F. Supp. at 504, this Court found that Trans Hudson's claims "w[ould] be governed by the U.C.C. and not by tort law." Trans Hudson, 2007 WL 1101444, at *5; see Goldson, 309 N.J. Super. at 397 ("Where, as here, there is no substantial disparity in bargaining power, and the only damage caused by the defective product is to the product itself, contract law . . . is best suited to set the metes and bounds of appropriate remedies."). Plaintiff's negligent design and manufacture claims here are likewise appropriately remedied under contract law–specifically, the U.C.C. Consequently, Counts I and II of the Amended Complaint fail as a matter of law and are dismissed with prejudice.

### B. Fraud Claim

Defendant does not move to dismiss Plaintiff's fraud claim in Count III of the Amended Complaint, but instead moves for a more definite statement, asserting that plaintiff has not pled fraud with particularity in accordance with Rule 9(b) of the Federal Rules of Civil Procedure. (Def. Br. at 7.) Defendants request that Plaintiff be required to plead "when, where, and how the fraud was committed." (See id. at 9.) Plaintiff states that Count III does, in fact, comply with Fed. R. Civ. P. 9(b) because (1) the allegations in Count III are not vague or ambiguous and (2)

the fraud claim is based on Defendant's omission rather than an affirmative representation. (Pl. Br. at 5-6.) Without citing any support, Plaintiff states that re-pleading is not required in these circumstances. (Id.)

To satisfy the requirements of Rule 9(b), a complaint alleging fraud must contain "precise allegations of date, time, or place." ETC Int'l v. Curriculum Advantage, Inc., No. 03-5898, 2006 WL 1645030, at *11 (D.N.J. June 19, 2006) (Linares, J.); see Kanter v. Barella, 489 F.3d 170, 175 (3d Cir. 2007) (stating that Rule 9(b) requires plaintiff to plead the " 'who, what, when, where, and how' of the events at issue"). Furthermore, "Rule 9(b) requires plaintiffs to identify the source of the allegedly fraudulent misrepresentation or omission," In re Rockefeller Ctr. Prop., Inc. Sec. Litig., 311 F.3d 198, 216 (3d Cir. 2002) (emphasis added), and "the substance of the alleged misrepresentations," ETC Int'l, 2006 WL 1645030, at *11 (citing Naporano, 79 F. Supp. 2d at 512). A plaintiff may also meet the Rule 9(b) requirements if he alleges that the information as to the fraud is within the defendant's control. Id. Plaintiff does not provide any of the requisite detail in Count III of his complaint: he merely alleges that "Defendant knew that the [Imprezas] were defective and prone to having the passenger compartment pervaded by the odor of fuel" and "failed to inform purchasers of the defect." (Am. Compl. ¶¶ 40, 39.) In addition, it is clear that allegations of fraud based upon defendant's omission are similarly subject to the requirements of Rule 9(b).

Without the necessary specificity, Subaru cannot adequately defend itself. Accordingly, Defendant's motion for a more definite statement is granted. Plaintiff must specify in his Second Amended Complaint to be submitted to the Court in accordance with this opinion the "who, what, when, where and how" of the alleged fraud as those are matters squarely within his

8

knowledge. Cf. Clark, 213 F.R.D. at 234.

## IV.   Conclusion

For the aforementioned reasons, Defendant's motion is granted. Counts I and II of the Amended Complaint are dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) and Plaintiff is required to provide a more definite statement in Count III of the Amended Complaint pursuant to Fed. R. Civ. P. 12(e).

Dated: March 5, 2008

/s/ Jose L. Linares
Jose L. Linares
United States District Judge

9