NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MICHAEL MILLMAN, on behalf of himself and all others similarly situated, | : : : : | |
| Plaintiff, | : | CIVIL ACTION NO. 07-4846 (JLL) |
| v. | : : | |
| SUBARU OF AMERICA, INC., | : : | **OPINION** |
| Defendant. | : : | |

Pending before this Court is Subaru of America, Inc.'s ("Defendant" or "Subaru") motion to dismiss Michael Millman's ("Plaintiff") Second Amended Complaint ("SAC") for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendant also brings a concurrent Rule 11 motion for sanctions. The court decides this motion on the papers without oral argument. See Fed. R. Civ. P. 78. For the reasons set forth below, both of Subaru's motions are granted.

**I.      Factual and Procedural History**

This Court issued a March 6, 2008 Opinion that provided a detailed outline of the alleged facts. (Docket Entry #16.) At a high-level, this matter stems from Subaru's issuance of an "All Technical Service Bulletin" on or around April 1, 2003, stating that the Subaru Impreza WRX automobile (the "Impreza") "may experience a fuel smell in cold weather . . . from the rubber hose connector, located under the intake manifold, between two direct fuel-feed metal lines to the injectors." (SAC ¶ 27.) Plaintiff is the owner of an Impreza and seeks to represent a class of

1

Impreza owners who "suffer from, or may suffer from, the design and/or manufacturing defect resulting in the odor of gasoline in the passenger compartment." (SAC ¶ 12.) Plaintiff's proposed class excludes Impreza owners who have experienced a physical injury as a result of the defects at issue in this litigation. (Id.) Finally, Plaintiff's SAC indicates that Plaintiff did not purchase his Impreza from Subaru but rather purchased it from his son in 2006. (Id. ¶ 31.) Neither Plaintiff nor his son were ever advised of the defects alleged in this action. (Id. ¶ 32.) Plaintiff seeks money damages for those that have paid to repair the fuel odor problem and an order requiring Subaru to repair those vehicles that have not yet been fixed.

On October 5, 2007, Plaintiff filed a class action complaint, followed quickly by an October 18, 2007 amended complaint ("FAC") alleging three counts associated with Subaru's Impreza vehicles – negligent design, negligent manufacture, and common law fraud. Defendant moved to dismiss Counts I and II of the FAC for failure to state a claim and moved for a more definite statement pursuant to F.R.C.P. 12(e) as to Count III. In a March 6, 2008 Opinion, this Court granted Defendant's motion in full, dismissing Counts I and II with prejudice and requiring Plaintiff to provide a more definite statement as to Count III within 30 days of the date of the Order. Specifically, Plaintiff had to plead his common law fraud with particularity, as required by Rule 9(b).

Plaintiff failed to file his SAC within 30 days of the March 6, 2008 Opinion. Rather than filing by the deadline of April 7, 2008, Plaintiff filed his SAC on June 16, 2008. This filing – while late – was in accordance with this Court's June 5, 2008 Order, which allowed Plaintiff ten

days from entry of the Order to file his SAC.[1]

The SAC sets forth three new paragraphs, while leaving the rest of the FAC exactly intact. Paragraph 31 indicates that Plaintiff did not purchase his vehicle from Subaru but rather purchased it from his son. (SAC ¶ 31.) Paragraph 32 indicates that Plaintiff's son purchased the Impreza from Subaru in 2001 and that neither Plaintiff nor his son received notice of any alleged defect involving the fuel lines. (Id. ¶ 32.) Finally, Paragraph 43 alleges that Subaru "had a duty to inform purchasers, owners and lessors of the Vehicles of the alleged defects after the Vehicles were sold or leased." ((Id. ¶ 43.) Again, aside from these three paragraphs, the SAC is a mirror-image of the FAC.

## II.     Standard

The applicable inquiry under Federal Rule of Civil Procedure 12(b)(6) is well-settled. Courts must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party.[2] See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982); Allegheny Gen. Hosp. v. Philip Morris, Inc., 228 F.3d 429, 434-35 (3d Cir. 2000). However, courts are not required to credit bald assertions or legal conclusions improperly alleged in the complaint. In re Burlington

---

[1] Subaru implicitly raises a timeliness argument, arguing that Plaintiff failed to file his SAC within the time period authorized by the March 6, 2008 Opinion and then again failed to file within ten days of the June 5, 2008 Order. While Plaintiff's filing was unquestionably late with respect to the March 6, 2008 Opinion, his SAC complied with the June 5, 2008 Order, and the Court therefore dismisses any timeliness objection and proceeds to the merits of the instant motion to dismiss.

[2] In doing so, a court may look only to the facts alleged in the complaint and any accompanying attachments, and may not look at the record. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1251, 1261 (3d Cir. 1994).

Coat Factory Sec. Litig., 114 F.3d 1410, 1429 (3d Cir. 1997).  Similarly, legal conclusions draped in the guise of factual allegations may not benefit from the presumption of truthfulness. See In re Nice Sys., Ltd. Sec. Litig., 135 F. Supp. 2d 551, 565 (D.N.J. 2001).

     A sound complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  This statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1959 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Moreover, "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Id.  Ultimately, however, the question is not whether plaintiffs will prevail at trial, but whether they should be given an opportunity to offer evidence in support of their claims.  Scheuer, 416 U.S. at 236.

**III.**   **Discussion**

    **A.**   **Motion to Dismiss**

        **1.**   **Negligent Design and Negligent Manufacturing**

    Defendant argues that Plaintiff has re-alleged the negligent design and negligent manufacturing claims that were dismissed with prejudice on March 6, 2008.  Plaintiff notes that he has not tried to re-allege either of those Counts and that the only allegation currently alive is contained in Count III.  (Opp. Br. 4 n.1.)  Contrary to Plaintiff's representations, the SAC does contain both a negligent design count (SAC ¶¶33-36) and a negligent manufacturing count (SAC ¶¶ 37-40).  The Court accepts Plaintiff's current representation as to the non-viability of Counts I and II and therefore grants Defendant's motion to dismiss those counts.  However, the Court notes that Plaintiff should have filed a Second Amended Complaint in accordance with this

Court's March 6, 2008 Order – doing so would have saved Defendant from moving to dismiss non-existent claims and would have saved the Court from expending time and resources with respect to evaluating those claims.

      **2.**      **Fraud**

In Count III, Plaintiff alleges fraud. The five elements of common-law fraud are: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely upon it; (4) reasonable reliance thereon by the other person; and (5) resulting damages. Gennari v. Weichert Co. Realtors, 148 N.J. 582, 601 (1997). Indirect reliance – the reliance theory under which Plaintiff wishes to proceed – holds that plaintiff can prove a fraud action "where he or she heard a statement not from the party that defrauded him or her but from that party's agent or from someone to whom the party communicated the false statement with the intention that the victim hear it, rely on it, and act to his or her detriment." Kaufman v. i-Stat Corp., 165 N.J. 94, 108 (2000). Even in an indirect reliance situation, "actual receipt and consideration of any misstatement remains central to the case of any plaintiff seeking to prove that he or she was deceived..." Id. at 109. Finally, a plaintiff must plead all allegations of fraud with particularity, as required by Federal Rule of Civil Procedure 9(b) and as mandated by this Court's March 6, 2008 Opinion.

Here, Plaintiff argues that Subaru "had reason to expect that its failure to inform purchasers of its vehicles of the defect would directly influence the conduct of purchasers of its used vehicles." (Opp. Br. 7.) Plaintiff further maintains that Subaru failed to disclose a potentially dangerous condition in its vehicles and more specifically that it knew in selling those vehicles directly to customers that those customers would eventually resell the vehicles to others.

5

Plaintiff's argument, however, fails to allege the requisite elements of common-law fraud or indirect reliance.

Plaintiff's arguments in support of an indirect reliance theory of liability suffer from a fatal defect – they are nowhere alleged in the SAC. In its March 6, 2008 Opinion, this Court explicitly advised Plaintiff to specify the "who, what, when, where and how" of the alleged fraud. (Docket Entry No. 16 at 8.) Plaintiff's SAC contains three new paragraphs and is identical to its Amended Complaint in every other respect. None of the added paragraphs cure the defects identified by this Court on March 6, 2008. At most, Plaintiff alleges that Subaru had a duty to inform purchasers, owners and lessors of its vehicles of an alleged defect. (SAC ¶ 42-43.) Plaintiff goes on to identify a failure on Subaru's part to inform purchasers of any defect and a vague statement that "purchasers of vehicles were reasonably relying upon Defendant to inform them of defects in the Vehicles." (SAC ¶¶ 43-44.)

The SAC, however, contains not one allegation of indirect reliance or of the most basic elements of common-law fraud – Plaintiff mentions no misstatement from Subaru to the direct purchaser, no intention by Subaru that the direct purchaser rely upon any misstatement, no mention of any misstatement conveyed by the direct purchaser to the secondary purchaser (Plaintiff), no intention or expectation by Subaru that the direct purchaser convey any misstatement to the secondary purchaser, and above all, no allegation that the secondary purchaser (Plaintiff) received, relied upon and considered any misstatement in making his decision to purchase the vehicle. All in all, Plaintiff fails to plead at all – let alone with particularity – any piece of the common-law fraud analysis, including facts that would substantiate his new theory of indirect reliance. Thus, Subaru's motion to dismiss this count with

prejudice is granted.

### B. Rule 11

Next, Subaru moves for sanctions pursuant to Fed. R. Civ. P. 11(b)(2). Rule 11(b)(2) reads as follows:

> (b) By presenting to the court a pleading, written motion, or other paper – whether by signing, filing, submitting, or later advocating it – an attorney or unrepresented party certifies that, to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.

Fed. R. Civ. P. 11(b)(2). Thus, Rule 11 requires a court to evaluate whether Plaintiff's actions were reasonable. The Third Circuit has defined reasonableness in this context as "'objective knowledge or belief at the time of the filing of a challenged paper' that the claim was well-grounded in law and fact." Ford Motor Co. v. Summit Motor Products, Inc., 930 F.2d 277, 289 (3d Cir. 1991) (citations omitted). Said differently, a court must apply "an objective standard of reasonableness under the circumstances." Martin v. Brown, 63 F.3d 1252, 1264 (3d Cir. 1995). Rule 11 is reserved for "exceptional circumstances," Gaiardo v. Ethyl Corp., 835 F.2d 479, 483 (3d Cir. 1987), but does not require a finding of bad faith. In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions, 278 F.3d 175 (3d Cir. 2002). Thus, an "empty head, pure heart" excuse cannot be used by the opposing party as justification for filing a frivolous motion. Clement v. Public Service Electric & Gas Co., 198 F.R.D. 634, 637 (D.N.J. 2001). Additionally, the "mere failure of a complaint to withstand a motion for summary judgment or a motion to dismiss should not be though to establish a rule violation." Simmerman v. Corino, 27 F.3d 58, 62 (3d Cir. 1994). Finally, Rule 11 includes a safe-harbor provision that requires a party

seeking sanctions to give his adversary 21-day notice of the offending conduct and a chance to withdraw or correct the questionable motion.[3] Fed. R. Civ. P. 11(c)(2).

At the outset, the Court notes that Plaintiff does not submit substantive opposition to the sanctions motion. Rather, in nine lines on the last page of its opposition to the motion to dismiss, Plaintiffs responds to the pending motion for sanctions by making two points: (1) Counts I and II are not re-alleged, and; (2) Plaintiff has successfully argued the merits of Count III. (Opp. Br. 8.) The Court has already found against both of these arguments – in fact, Counts I and II *are* alleged in the SAC, and Plaintiff has not plead any of the requirements necessary to substantiate Count III's allegation of fraud. Rule 11, however, does not countenance sanctions for the mere failure to withstand a motion to dismiss. Rather, the Court must evaluate whether Plaintiff's SAC was reasonable under the circumstances.

Upon a thorough evaluation of the facts, the Court finds that partial sanctions are warranted. Plaintiff's conduct in re-alleging Counts I and II in the SAC did not meet the objective standard of reasonableness implicit in Rule 11 and outlined by the Third Circuit. After all, each of those counts had already been dismissed with prejudice and the failure to remove them after they had been dismissed is patently unreasonable. The Court finds especially compelling the fact that Plaintiff failed to remove the allegations even after receiving a copy of Defendants' motion for sanctions within the safe-harbor period. As to Count III, the Court has already found that the SAC does not substantiate a claim for fraud. The Court realizes that Plaintiffs should have made more of an effort to plead with particularity, especially given the

---

[3] Subaru complied with Rule 11's mandatory safe-harbor provisions by serving Plaintiff with a copy of the motion for sanctions on July 16, 2008, and waiting until after the 21-day notice period to file it. (Motion for Sanctions, Murphy Cert. ¶ 4.)

guidance contained in the March 6, 2008 Opinion. However, the failure to allege fraud with particularity – in this case – has not risen to the level of Rule 11 sanctions. Thus, the Court grants Defendant Rule 11 sanctions only for the time and cost expended in filing the motion to dismiss as to Counts I and II.

Under Rule 11(c), if a court determines that 11(b) has been violated, the court may "impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for that violation." Fed. R. Civ. P. 11(c). However, monetary sanctions "may not be awarded against a represented party for a violation of subdivision (b)(2)." Fed. R. Civ. P. 11(c)(2)(A). The Court finds that partial monetary sanctions against Plaintiff's attorneys are appropriate here inasmuch as they account for the objectively unreasonable decision to file a Second Amended Complaint that re-alleged previously-dismissed claims. Subaru's motion for sanctions is therefore granted in part, and Plaintiff's counsel is liable for the reasonable attorneys' fees and costs expended by Subaru's lawyers in litigating the instant motion to dismiss as to Counts I and II only.

### IV.    Conclusion

For the reasons set forth above, Subaru's motion to dismiss is granted. Additionally, Subaru's attorneys are granted partial costs and fees associated with filing the instant motion to dismiss as to Counts I and II. A certification containing reasonable costs and fees shall be submitted to this Court for approval, and an appropriate Order accompanies this Opinion.

Dated: January 26, 2009  /s/ Jose L. Linares
United States District Judge